**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000043
30-OCT-2013
09:16 AM**

CAAP-11-0000043

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

STATE OF HAWAI‘I, Plaintiff-Appellee,
v.
KAREN OSHIRO, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-0483)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Fujise and Reifurth, JJ.)

Defendant-Appellant Karen Oshiro (Oshiro) appeals from the Judgment of Conviction and Probation Sentence (Judgment) filed on December 23, 2010, in the Circuit Court of the First Circuit (Circuit Court).[1] Plaintiff-Appellee State of Hawai‘i (State) charged Oshiro with knowingly or intentionally violating an injunction against harassment, in violation Hawaii Revised Statutes (HRS) § 604-10.5(h) (Supp. 2009). A jury found Oshiro guilty as charged. The Circuit Court sentenced Oshiro to one year of probation, subject to the special condition that she serve 150 days in jail.

On appeal, Oshiro contends that: (1) the Circuit Court abused its discretion in admitting evidence which she characterizes as "prior bad acts"; (2) the Circuit Court plainly

---

[1] The Honorable Michael D. Wilson presided.

erred in failing to *sua sponte* give a limiting instruction regarding that evidence; and (3) there was insufficient evidence to support her conviction.  We affirm.

I.

A.

The complaining witness (CW) and Oshiro were neighbors. The CW and his wife resided on property that had an easement over a driveway that provided access to two cottages behind their property.  Oshiro lived in one of the cottages.  The access easement was approximately 10 to 12 feet wide and ran past the CW's house to the back of his property.  The CW's wife was a botanist and had cultivated a variety of plants, including plants that bordered along the access easement.  Many of the plants grown by the CW's wife were edible and were used by the CW and his wife in their cooking.

On January 20, 2010, the CW and his wife as Petitioners obtained an amended order granting their petition for injunction against harassment, which imposed restrictions on Oshiro for a three-year period.  Under the injunction order, Oshiro was restrained and enjoined from contacting, threatening, or harassing the CW and his wife and from possessing any firearm or ammunition.  In addition, the injunction order prohibited Oshiro from "touch[ing] any of Petitioners' plants which are planted along the access easement on Petitioners' property."

Prior to trial, Oshiro moved in limine to exclude evidence of Oshiro's criminal record, other "bad acts," and acts that may not technically be considered bad acts but were irrelevant or unfairly prejudicial.  The specific acts and evidence identified by Oshiro were: (1) cases in which Oshiro was the defendant or suspect; (2) references to a bench warrant being out for Oshiro's arrest; (3) the CW's statement to the police that he "was pretty certain that [Oshiro] will once again pull the plant along the easement"; (4) the transport of Oshiro to Queen's Hosptial; (5) references to Oshiro's mental health; (6) any prior instance of Oshiro using a knife to hurt herself; (7)

any conduct requiring the use of force by police; and (8) any conduct resulting in the removal of Oshiro's silver blade knife. The Circuit Court granted Oshiro's motion in limine as to this evidence.

B.

The State presented evidence that on January 29, 2010, Honolulu Police Officer Pete Jones (Officer Jones) served Oshiro with the amended order granting petition for injunction against harassment. Officer Jones testified that he did not read the terms of the injunction order word for word, but explained its terms to Oshiro. Officer Jones warned Oshiro not to touch the neighbors' plants. Oshiro indicated that she understood the terms of the injunction order and signed a document acknowledging her receipt of the injunction order.

The CW testified that on February 22, 2010, he saw Oshiro walking towards his property as he was driving away from his residence. The CW drove around the block and returned to his residence. He saw Oshiro in the access easement "stretching out, yanking, and pulling down the plants . . . because one of the flowers, the edible flowers are right on top." When the CW drove up to Oshiro, she was pulling down a branch of an elderberry tree that was planted along the access easement. Oshiro saw the CW, and she let go of the branch and picked up her belongings. The CW saw a broken tree branch and surmised that Oshiro had been trying to reach the topmost branch, which contained edible flowers. The CW testified that there were no branches or vines hanging over the easement that were lower than 15 feet high.

On cross-examination, defense counsel asked the CW, "But you don't know if [obtaining the farthest flower] was the reason why she was pulling down on the branch?" In response, the CW indicated that he did know this was the case "[f]rom previous, uh, history --." Defense counsel also asked the CW, "And you don't get along with Ms. Oshiro[,] correct?" In response, the CW stated that prior to early 2009, he and his wife had been on

3

"very friendly" terms with Oshiro, but things changed after that time and there were many reasons for the change.

On re-direct examination, the CW explained that his once friendly relationship with Oshiro changed after the CW learned that Oshiro was shooting at birds on the CW's property with a blow gun and/or sling shot. The CW testified:

> I noticed [Oshiro] having a blow gun and shooting it from the driveway shooting at birds in our compound. So I confronted then asked her, "Why are you shooting at those birds?" Because we were picking up dozens of beads, plastic beads and pellets on our easement, in front of our vehicle, on the easement, in the back yard, by the (inaudible) every day.
>
> So one day I observed her shooting and also using the sling shot. So I told her on a number of occasions "Do not shoot those birds."

The CW stated that in response, Oshiro "started in obscenities just coming at me." The CW related that he "had to call the Humane Society" and that "[t]hey came down." The incident marked the turning point in their relationship, which went "downhill" from there. The CW testified that thereafter there were multiple unspecified incidents with Oshiro.

C.

Oshiro testified in her own defense at trial. Oshiro acknowledged that a police officer had served her with a document. She testified that reading and writing were not her "forte" and that she had no idea what the officer had given her. Oshiro did not recall the officer reading the document to her or explaining its terms.

According to Oshiro, on the day in question, she was walking down the easement looking down when her hat got snagged on a vine, dislodging a pin from her hat. Oshiro pulled the vine out of her hat and tried to find the pin on the ground. When she saw the CW's car approaching, she grabbed leaves and rubble on the ground where she thought her pin had dropped. Oshiro stated that the vine that snagged her hat was in the elderberry tree and was hanging below 5 feet 8 inches. Oshiro testified that when she grabbed the vine to untangle her hat, she was not aware that

4

there was an injunction order that prohibited her from touching the CW's plants. Oshiro denied that her relationship with the CW turned hostile after 2009. Oshiro stated that they got along "[i]n a way[,]" but "weren't really that friendly . . . I knew who he was, but I never talked to him."

II.

We resolve the issues raised on appeal by Oshiro as follows:

A.

1.

We reject Oshiro's claim that the Circuit Court abused its discretion in admitting the following evidence which Oshiro characterizes as "bad act" evidence: (1) the CW's indication that he knew "[f]rom previous, uh, history" that Oshiro was pulling down the branch to get at the flowers on the top part of the tree; (2) Oshiro shot at birds with a pellet gun or slingshot; (3) Oshiro swore at the CW; (4) Oshiro was investigated by the Humane Society;[2] and (5) the CW and Oshiro had been involved in multiple unspecified incidents.

2.

With respect to the CW's indication that he knew "[f]rom previous, uh, history" why Oshiro was pulling down the branch, the CW's testimony was in direct response to defense counsel's question. Defense counsel elicited this testimony from the CW by asking, "But you don't know if [obtaining the farthest flower] was the reason why she was pulling down on the branch?" Moreover, the CW's response did not refer to any "bad acts" committed by Oshiro and provided an explanation for the CW's interpretation of Oshiro's actions. We conclude that the Circuit

---

[2] The CW actually testified that he "had to call the Humane Society" after observing Oshiro shooting at birds and that they responded to his call.

Court did not abuse its discretion in denying Oshiro's motion to strike the CW's response.[3/]

3.

We also conclude that the Circuit Court did not abuse its discretion in admitting the remainder of the "bad act" evidence challenged by Oshiro on appeal. First, the record does not show that Oshiro specifically objected or moved to strike such evidence on Hawaii Rules of Evidence (HRE) Rule 404(b) (Supp. 2012) grounds.[4/] HRE Rule 103(a) (Supp. 2012) provides that in order to preserve a claim of error over the admission of evidence, a party must "stat[e] the specific ground of the objection, if the specific ground was not apparent from the context[.]" We conclude that it was not apparent from the context of Oshiro's general objection and motion to strike that she was objecting to the evidence on HRE Rule 404(b) grounds, rather than on some other basis such as relevance. Therefore, Oshiro did not preserve her claim that the challenged evidence was inadmissible under HRE Rule 404(b).

Second, assuming arguendo that Oshiro preserved her HRE Rule 404(b) challenge, Oshiro opened the door to the evidence by questioning the CW about his relationship with Oshiro. Defense counsel's inquiry opened the door to, and made relevant, the CW's explanation of the nature of his relationship with Oshiro, namely, that the CW had a very friendly relationship with Oshiro until the CW learned that Oshiro was shooting at birds on his property; Oshiro swore at the CW during an argument about Oshiro shooting at birds; the CW reported Oshiro's conduct to the Humane Society, who responded to the report; and the CW and Oshiro were involved in multiple subsequent incidents. See State v. McElroy, 105 Hawai'i 352, 356-57, 97 P.3d 1004, 1008-09 (2004) (holding

---

[3/] We further conclude that the CW's cryptic response did not require a sua sponte "bad act" limiting instruction. See also discussion infra.

[4/] We note that a bench conference held after Oshiro moved to strike was not transcribed, and Oshiro did not attempt to correct or supplement the record with what transpired during the bench conference.

that it was not prosecutorial misconduct for the prosecutor to question the defendant to develop an issue that the defendant himself broached); State v. Acker, No. 30205, 2012 WL 4857018, at *12-13 (Hawaiʻi App. Oct. 12, 2012) (Memorandum Opinion) (concluding that the defendant's questioning of a witness opened the door to the admission of "bad act" evidence), cert. granted, 2013 WL 656778 (Hawaiʻi Feb. 21, 2013); State v. Culbreath, 659 S.E.2d 268, 272 (S.C. Ct. App. 2008) ("[A] defendant may open the door to what would be otherwise improper evidence through his own introduction of evidence or witness examination.").

Third, the evidence of Oshiro's hostile relationship with the CW at the time of the charged violation of the injunction order was relevant to show Oshiro's motive for deliberately violating the injunction order, her intent in touching the plants, and the absence of mistake or accident. In addition, the challenged evidence did not constitute character propensity evidence prohibited by HRE Rule 404(b). Oshiro's alleged conduct in shooting at birds and arguing with the CW over the shooting at birds would not show that she had the propensity to violate an injunction order by touching the CW's plants.

The Circuit Court's admission of the evidence of Oshiro's hostile relationship with the CW did not violate the notice provisions of HRE Rule 404(b). As noted, this evidence did not constitute character propensity evidence prohibited by HRE Rule 404(b). Moreover, there is no indication that the State intended to introduce this evidence at trial until Oshiro opened the door to the evidence by cross-examining the CW about his relationship with Oshiro. Under these circumstances, even if the evidence was considered as falling under HRE Rule 404(b), the Circuit Court would not have abused its discretion in finding good cause for excusing pretrial notification.[5]

---

[5] See footnote 4, supra.

B.

We conclude that the Circuit Court did not commit plain error in failing to *sua sponte* give a limiting instruction regarding the challenged evidence relating to the reasons for Oshiro's hostile relationship with the CW. HRE Rule 105 (1993) provides: "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) Oshiro acknowledges that she did not request a limiting instruction from the Circuit Court.

For the reasons set forth in State v. Munson, No. 30495, 2012 WL 5677857, at *4-5 (Hawai'i App. Nov. 15, 2012) (Memorandum Opinion), which relied upon the reasoning of the Hawai'i Supreme Court's recent decision in State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012), we conclude that the Circuit Court was not required to *sua sponte* give a limiting instruction regarding the evidence concerning Oshiro's hostile relationship with the CW. HRE Rule 105 recognizes the defendant's prerogative to make strategic choices by only requiring the court to give a limiting instruction "upon request." See Munson, 2012 WL 5677857, at *5. As a matter of legitimate trial strategy, Oshiro's trial counsel may have decided to forego requesting a limiting instruction to downplay and avoid drawing attention to the evidence concerning Oshiro's hostile relationship with the CW, which counsel may have viewed as painting Oshiro in a negative light. See id., 2012 WL 5677857, at *4-5.

C.

Oshiro contends that there was insufficient evidence to show that she (1) knew the injunction order prohibited her from touching plants that were planted along the access easement; and (2) intentionally or knowingly violated the injunction order by touching the plants. We disagree.

Officer Jones testified that he served the injunction order on Oshiro; that he explained its terms to her and warned

8

her not to touch the neighbors' plants; and that Oshiro indicated that she understood the terms of the injunction order and signed an acknowledgment that she received the injunction order. The CW testified that he saw Oshiro yanking and pulling down plants, while Oshiro was standing in the access easement; that when the CW drove up to Oshiro, she was pulling down the branch of an elderberry tree that was planted along the access easement; and that he saw a broken tree branch next to Oshiro. When viewed in the light most favorable to the State, there was substantial evidence to prove that Oshiro knew the injunction order prohibited her from touching plants that were planted along the access easement and that she intentionally or knowingly violated the injunction order.

III.

We affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawaiʻi, October 30, 2013.

On the briefs:

Jennifer D.K. Ng
Deputy Public Defender
for Defendant-Appellant

Anne K. Clarkin
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*Associate Judge*

*Associate Judge*

9